IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM E. CALHOUN,                              No. 3:16-cv-01901-HZ

            Plaintiff,

      v.

NANCY A. BERRYHILL, Acting                       OPINION & ORDER
Commissioner of Social Security,

            Defendant.

Lisa R.J. Porter
JP LAW PC
5200 S.W Meadows Rd., Suite 150
Lake Oswego, Oregon 97035

            Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Jordan D. Goddard
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff William Calhoun brings this action seeking judicial review of the

Commissioner's final decision to deny supplemental security income (SS). This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g), incorporated by 42 U.S.C. § 1383(c)(3). I affirm the

Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI on August 9, 2012, alleging an onset date of June 15, 2012. Tr.

179-88. His application was denied initially and on reconsideration. Tr. 62-78, 106-10 (Initial);

Tr. 79-96, 114-16 (Reconsideration). On December 11, 2014, Plaintiff appeared, with counsel,

for a hearing before an Administrative Law Judge (ALJ). Tr. 35-61. On March 27, 2015, the

ALJ found Plaintiff not disabled. Tr. 8-34. The Appeals Council denied review. Tr. 1-4.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on having depression, anxiety, kyphosis, diminished

hearing, diminished vision, diminished cognitive ability, diminished speech capacity, and

hepatitis C. Tr. 201. At the time of the hearing, he was thirty-eight years old. Tr. 39. He

graduated from high school but the record is unclear whether he took special education classes or

received a modified diploma. Tr. 41, 49-50 (at the hearing, in response to whether he took

special education classes, Plaintiff testified "LRC" with no further explanation); Tr. 209, 240, 306, 364 (assertions by Plaintiff's fiancée that he received a modified diploma because he participated in special education classes); Tr. 431 (statement by Plaintiff's mother that he earned a regular diploma, despite struggling in school).  He has work experience as an agricultural sorter, groundskeeper, and forest worker.  Tr. 55-56.  However, the ALJ found that this did not constitute past relevant work.  Tr. 27.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yucker*t, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his August 2012 application date. Tr. 13. Next, at step two, the ALJ determined that Plaintiff has severe impairments of borderline intellectual functioning, depressive disorder, written expression disorder, reading disorder, mild expressive language disorder, dependent personality traits, alcohol abuse, polysubstance abuse in reported remission, and tobacco use. *Id.* However, at step three, the ALJ determined that his impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 12-18.

At step four, the ALJ concluded that Plaintiff has the RFC to perform a full range of work

at all exertional levels, but with the following non-exertional limitations: he can perform simple, routine tasks; he can never have contact with the public; he can perform work where reading, writing, or performing math is not a requirement; he can perform work where communication with others is not an essential function of the job; he can have less than occasional changes in work tasks over the workweek; and he must avoid concentrated exposure to hazards. Tr. 28. With this RFC, the ALJ proceeded to step five because Plaintiff has no past relevant work. Tr. 27. At step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as car lot attendant, laundry sorter, and electronics worker. Tr. 28-29. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 29.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred in finding his subjective testimony not entirely credible, in rejecting medical opinions, and in rejecting lay witness testimony. Based on these errors, he contends that the ALJ's RFC was flawed.

I. Credibility Determination

The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and

relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may

also consider the ability to perform household chores, the lack of any side effects from prescribed

medications, and the unexplained absence of treatment for excessive pain. *Id.*; *see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors

in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation,

such as the claimant's reputation for lying, prior inconsistent statements concerning the

symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of
> credibility evaluation. For instance, the ALJ may consider inconsistencies either
> in the claimant's testimony or between the testimony and the claimant's conduct,
> unexplained or inadequately explained failure to seek treatment or to follow a
> prescribed course of treatment, and whether the claimant engages in daily
> activities inconsistent with the alleged symptoms[.] While a claimant need not
> vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit
> a claimant's testimony when the claimant reports participation in everyday
> activities indicating capacities that are transferable to a work setting[.] Even
> where those activities suggest some difficulty functioning, they may be grounds
> for discrediting the claimant's testimony to the extent that they contradict claims
> of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ engaged in the appropriate two-step analysis. Tr. 18-19. She found that while

Plaintiff's medically determinable impairments could reasonably be expected to cause some of

his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of

these symptoms were not entirely credible. Tr. 19. The ALJ provided several reasons in support

of this determination: (1) Plaintiff's testimony was not supported by the medical and treatment record; (2) Plaintiff's testimony was inconsistent with his actual functioning; (3) Plaintiff refused to undergo a recommended mental health evaluation; (4) Plaintiff made inconsistent statements regarding why he stopped working; (5) Plaintiff demonstrated a pattern of making false statements for secondary gain; and (6) Plaintiff had a long history of engaging in criminal behavior with multiple jail visits which could hamper his ability to persist at a long-term job and could also account for his poor work history. Tr. 19-24.

Plaintiff argues that the ALJ's credibility determination is not based on clear and convincing reasons because the determination is not supported by the record and is based on speculation. Plaintiff primarily focuses on the ALJ's discussion of various inconsistent statements made by Plaintiff. He argues that the ALJ's interpretation of these statements is error and speculative because the record shows that the inconsistencies are attributable to Plaintiff's limited functioning and are not intentional misrepresentations.

The ALJ found that Plaintiff had made inconsistent statements about why he stopped working. Tr. 22. During the hearing, Plaintiff testified that he stopped working at the cherry plant because of hepatitis C flare ups. *Id.*; *see also* Tr. 42-43 (hearing testimony). He explained that when he woke up in the morning to go to work, he would get sick with nausea and vomiting which he attributed to his hepatitis C. *Id.* During the several weeks that he worked there, this occurred three or four times, causing him to be absent from work. Tr. 22. However, in his disability application, Plaintiff stated that he lost the job because he went home twice in two weeks due to chest pain and one week later, the employer laid him off citing "lack of work." *Id.* (citing Tr. 202). Moreover, the ALJ explained, the medical evidence showed that Plaintiff had

only minimal complaints of nausea or any other symptom from his hepatitis C that would impact his ability to work. *Id.* (citing Tr. 335 (June 2012 emergency department report noting complaint of chest pain and "some" nausea, but denying stomach and other pain and making no mention of vomiting); Tr. 354 (Aug. 2012 chart note of visit with Physician's Assistant (PA) Fatima Baar to establish care and noting a lack of dizziness, fatigue, headaches, abdominal pain; further finding normal temperature and assessing Plaintiff as alert, cooperative, and in no apparent distress despite his report of fever and nausea; recommending no particular care plan for hepatitis C other than taking acetaminophen or ibuprofen for fever control); Tr.361 (Sept. 2012 chart note of visit with gastroenterologist Kimya Nguyen, D.O. to discuss hepatitis C treatment with Plaintiff reporting intermittent episodes of nausea, body aches, fever, and chest pain but which were well controlled with naproxen); Tr. 383 (Oct. 2012 chart note of visit with Physician's Assistant (PA) Daniel Butler of Salem Gastroenterology Consultants to discuss hepatitis C treatment and noting no current issues with nausea, vomiting, or fever)).

The ALJ found additional inconsistency between Plaintiff's testimony that he fainted at work twice around the same time as his asserted hepatitis C flare ups and the record which suggested that he fainted at work because he failed to wear the required respirator equipment. Tr. 22; *compare* Tr. 51 (Plaintiff's hearing testimony that he fainted at work twice which "they relate" to the hepatitis C), *with* Tr. 338 (June 2012 emergency department chart note summarizing visit four days previously for a syncopal (fainting) episode, noting that no cause for the episode had been found and that Plaintiff had been asymptomatic since that time, and that the day of the episode he was not wearing his respirator which he was supposed to be wearing because of exposure to chemicals and fumes).

The ALJ also found that Plaintiff made inconsistent statements regarding his alcohol use, alcohol consumption quantity, the last time he used methamphetamines, and his lack of hepatitis C treatment. Tr. 23. In regard to the alcohol use, the ALJ noted that Plaintiff testified at the December 2014 hearing that he had not consumed alcohol in the past two years. *Id.* But, there were numerous notes in the record regarding his continued alcohol consumption after a period of sobriety. *Id.* (citing Tr. 472 (Sept. 2014 emergency department chart note stating alcohol odor detected on Plaintiff's breath); Tr. 529 (May 2014 chart note of office visit with PA Baar noting that Plaintiff continued to drink and was not interested in quitting); Tr. 533 (April 2014 chart note of office visit with PA Baar noting that Plaintiff continued to drink)).

In support of the amount of alcohol consumed and the last use of methamphetamine, the ALJ cited to several records. Tr. 23 (citing Tr. 311 (June 2012 report of drinking three to four times per week); Tr. 335 (June 2012 report of denying alcohol use and having been clean of methamphetamine use for eighteen months); Tr. 348 (May 2012 report of occasional alcohol use and last use of methamphetamine eighteen months prior to May 31, 2012); Tr. 353 (Aug. 5, 2012 report of alcohol consumption "once in awhile" and last use of methamphetamine eighteen months prior); Tr. 361 (Sept. 12, 2012 report of three to four beers weekly and last use of methamphetamine eighteen months prior); Tr. 383 (Oct. 23, 2012 report of alcohol consumption of five drinks per week until one month prior; last use of methamphetamine one to two years ago); Tr. 386 (Oct. 2012 report of no alcohol since August 2012 and last use of methamphetamine in 2010); Tr. 420 (Nov. 2012 report noting Plaintiff's stating he last used alcohol in July 2012 and no report of any extensive alcohol use); Tr. 433 (Nov. 2012 report of having had no alcohol for three and one-half months but reporting prior use of drinking from two

to ten beers per day; report of having been clean from methamphetamine for nineteen years, having begun using at age eighteen)).

As to his hepatitis C treatment, the ALJ noted that Plaintiff testified that he had not received interferon treatment because of his frustrations with medical providers instructing him to continue his sobriety and to abstain from alcohol use. Tr. 23. The ALJ discussed, however, that the record showed that Plaintiff had not qualified for treatment because of his own failure to cooperate with the recommendations to stop using alcohol for a period of time. Tr. 24 (citing Tr. 533 (April 2014 report that Plaintiff did not stop drinking for twelve months as recommended for treatment and that he continued to drink instead of taking interferon treatment); Tr. 531 (May 2014 report that Plaintiff continued to drink and smoke, was not interested in quitting, and did not want to follow up with gastroenterology to discuss hepatitis C interferon treatment)).

In addition to these inconsistencies, the ALJ noted three other areas of inconsistent statements which she believed showed a pattern of making false statements for secondary gain. Tr. 23. First, the ALJ noted that immediately following a car accident, Plaintiff was able to ambulate without difficulty but then, as soon as law enforcement arrived, he started complaining of neck and back pain as well as problems remembering events. Tr. 23 (citing Tr. 471). Further, the ALJ stated, the record indicated Plaintiff was not direct with emergency room staff about whether he was the driver during the accident. *Id.* (citing Tr. 471). The ALJ noted that the emergency department examination detected a slight odor of alcohol on his breath. *Id.* (citing Tr. 471). Additionally, during the hearing, Plaintiff testified that he had a suspended license. *Id.* The ALJ reasoned that both the possible use of alcohol and the suspended license could account for Plaintiff's inconsistent presentations and failure to be forthright with information. *Id.*

Next, the ALJ cited to inconsistency in Plaintiff's chest pain symptoms in the emergency department in June 2012. Tr. 23 (citing Tr. 335-37). Plaintiff presented to the emergency department complaining of chest pain. Tr. 335. The physician noted that when he first walked into the exam room and asked Plaintiff about the pain, Plaintiff stated it had completely resolved. *Id.* Three minutes later, the physician asked him again and Plaintiff reported it was a 10 out of 10. *Id.* Then, when the physician reminded Plaintiff that Plaintiff had just said he had no pain, Plaintiff said "oh wait, maybe it is only a 2 out of 10." *Id.* The physician noted that previous examinations and findings were normal and the symptoms were most consistent with a musculoskeletal etiology. Tr. 337. The physician noted that the symptoms occurred only while Plaintiff was at work. *Id.* The ALJ indicated that Plaintiff's inconsistent statements could suggest that he was searching for a way to get out of work. *Id.*

Finally, the ALJ noted that Plaintiff testified that he lived with his parents and had not lived with his significant other at any point in time. *Id.* However, the evidence showed that he essentially lived with his girlfriend but was hesitant to admit this because he is not on her rental agreement. *Id.* (citing Tr. 431, 434, 488).

Plaintiff argues that the ALJ erred in relying on these inconsistencies as a basis for finding Plaintiff not entirely credible. Plaintiff points to the emergency room report after his car accident to argue that the emergency room staff attributed any memory loss to the accident and not to an attempt by Plaintiff to mislead. Tr. 472 (noting under central nervous system that Plaintiff was initially amnestic to the event). And, Plaintiff adds, the record shows he has a history of an unclear and hazy memory as demonstrated by his inability at the hearing to answer simple questions including where he had worked and why he was filing for disability. Tr. 46, 51.

Plaintiff also points to the emergency room record regarding his visit for complaints of chest pain. Plaintiff states that again, the physician there noted only that Plaintiff was a "difficult historian," not that Plaintiff was malingering or intentionally misleading with his inconsistent reports of pain.

Plaintiff also contends that his inconsistent statements regarding the timing of his sobriety are more appropriately attributed to his poor insight and judgment. *See* Tr. 361 (Dr. Nguyen noting that Plaintiff had poor insight and judgment and that it was essential for Plaintiff to be evaluated for schizophrenia). He argues that the ALJ erred by attributing Plaintiff's confusion about the amount of time he was to be sober before qualifying for interferon treatment to a lack of credibility rather than to his mental health and learning disabilities.

Defendant correctly asserts that the ALJ may properly consider the reason a claimant stopped working in evaluating the reliability of the claimant's subjective complaints and that the ALJ may engage in ordinary techniques of credibility evaluation such as inconsistencies in testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Plaintiff argues that because the reasons he gave about why he stopped working, while different, both concerned medical symptoms, there is no inconsistency and that the multiple reasons further support his argument that he cannot perform full-time work. This argument misses the point of the credibility determination. The ALJ's focus on inconsistent reasons in this context is to assess whether a claimant's subjective testimony is believable. The fact that a claimant has given different reasons for stopping work may be reasonably interpreted by a factfinder as making that claimant less credible, regardless of whether the varying reasons all relate to a physical or mental impairment. Thus, the ALJ did not err in relying on the

inconsistency here.

Plaintiff also argues that it was error to rely on inconsistent statements about the amount of alcohol he has consumed because an alcoholic's testimony about his alcohol use is unreliable. Here, however, not only were there inconsistent reports about the amount of alcohol consumed, the ALJ noted that the medical reports contradicted Plaintiff's 2014 hearing testimony that he had not had a drink in more than two years. It was reasonable for the ALJ to rely on that contradiction in assessing Plaintiff's credibility.

Plaintiff fails to discuss the evidence that immediately following the car accident, Plaintiff ambulated without difficulty until law enforcement arrived and then complained of pain and that the emergency department noted alcohol on his breath. These facts are undisputed and are unrelated to any memory problems induced by the car accident. As to the chest pain-related report at the emergency room in June 2012, the chart note remarked that the chest pain occurred only while Plaintiff was working. Thus, while he may have been a poor historian, the timing of the chest pain being limited to work was notable enough for the physician to remark on it. Further, regardless of the source of his confusion about the amount of time he was to remain sober before qualifying for interferon treatment, it is undisputed that he knew sobriety was required yet he failed to stop drinking. Additionally, his claim of debilitating nausea, vomiting, and fever was inconsistent with the medical record which showed it at most as an intermittent problem which was controlled by medication.

The ALJ's finding that these multiple inconsistences support a determination that Plaintiff's limitations testimony is not credible was a reasonable interpretation of the record. Although it was not the only interpretation, it was not unreasonable and was supported by several

specific citations to the record, the accuracy of which is not disputed. As noted above, when the evidence of record is capable of "more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted). The ALJ did not err in considering the inconsistencies described as one basis for her negative credibility determination.

The ALJ also found that Plaintiff failed to follow the recommendation of obtaining a mental health assessment and further, that Plaintiff's failure to stop drinking undermined the asserted severity of his symptoms. Failure to follow treatment recommendations is a recognized basis for finding subjective testimony not credible. *E.g.*, *Molina*, 674 F.3d at 1113. Plaintiff argues that failure to follow treatment or relying on conservative treatment is not a legitimate basis for rejecting his testimony when "he has a good reason for not seeking more aggressive treatment." Pl.'s Op. Brief 19, ECF 12. He argues that his longstanding and complex medical issues block his clear understanding of his own illness and that even his physicians acknowledge that he has a poor understanding of his condition. *Id.*

In support of this argument, Plaintiff cites to a November 2012 psychological evaluation report noting that Plaintiff' relied on his long-term partner to provide most of his medical information and did not seem to have any interest or concern regarding his medical condition. *Id.* (citing Tr. 434). This record does not support Plaintiff's argument. The report notes only that during an interview, Plaintiff did not show interest or concern about his medical condition. It does not suggest that he could not comprehend information about his condition. Further, I agree with Defendant that the record more reasonably indicates that Plaintiff understood exactly what was required of him to qualify for interferon treatment: he had to maintain sobriety for a certain

period of time.  Even if there was a misunderstanding about the length of time he had to abstain from alcohol, he knew he had to avoid it and even did so for a period of time in order to be eligible for interferon treatment.  The ALJ's interpretation of the record on this issue was reasonable.

The ALJ found that Plaintiff was able to independently manage almost all aspects of his activities of daily living as well as tend to his pets and help take care of his girlfriend's four children.  Tr. 22-23.  He is actively involved with his church, including performing volunteer work, and enjoys certain mentally-based tasks such as playing card games and computer games.  Tr. 23.  He makes wind chimes from scrap metal which also requires a certain mental acuity.  *Id.*  His activities, which include walking as a form of transportation, belie his assertion of disabling fatigue.  *Id.*

Although Plaintiff's activities are somewhat limited, the ALJ's RFC is limited as well, accounting for the need for simple, routine tasks, limited communication, less than occasional changes in work tasks, no contact with the public, and no reading, writing, or math requirements.  Tr. 18.  Plaintiff's daily activities are consistent with this RFC and to the extent his subjective testimony alleged more disabling symptoms, the ALJ properly found that his activities were inconsistent with such testimony.

The ALJ gave clear and convincing reasons, supported by substantial evidence in the record, in support of her credibility finding.  Thus, the ALJ did not err.

II.  Medical Opinions

Social security law recognizes three types of physicians:  (1) treating, (2) examining, and (3) nonexamining.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  Generally, more

weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). And, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012. "'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in *Ryan*). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id.* (quoting *Bayliss*, 427 F.3d at 1216).

The ALJ discussed the opinions of examining psychologists Gregory Cole, Ph.D., and Paul Stoltzfus, Psy. D. As to Dr. Cole, the ALJ initially summarized his report and then discussed the weight she gave to it. Tr. 20-21, 25. She noted that Dr. Cole opined that Plaintiff could sustain simple, routine tasks and complete a simple multi-step task during the evaluation. Tr. 25. She also noted Dr. Cole's opinion that Plaintiff's claimed pain problems and intellectual deficits/learning disorders would primarily impact his overall level of vocational success. *Id.* She explained that Dr. Cole recommended that Plaintiff undergo further medical evaluation for the alleged pain symptoms. *Id.*

The ALJ gave Dr. Cole's opinion significant weight. She relied on his knowledge of the Social Security Administration disability program and the fact that he had personally examined Plaintiff in forming his opinion. *Id.* She also found that Dr. Cole's opinion regarding Plaintiff's cognitive functioning was consistent with Plaintiff's presentation and performance during the examination as well as his demonstrated activities in his personal life showing that he tended to

certain mental tasks like volunteering at his church, making wind chimes, playing computer games, and performing household chores. *Id.* While giving Dr. Cole's opinion significant weight, she also noted that she added restrictions to the RFC based on Plaintiff's allegations during the hearing as well as on Dr. Stoltzfus's report. *Id.*

The ALJ summarized Dr. Stoltzfus's report and then discussed the weight to give it. Tr. 21, 25. She noted that Dr. Stoltzfus opined that Plaintiff was capable of performing more daily tasks and employment than he had to date. *Id.* She acknowledged Dr. Stoltzfus's opinion that Plaintiff needed structure and guidance to become more productive and that he would benefit from vocational rehabilitation services. *Id.* She also cited his opinion that Plaintiff would need accommodations for his below average IQ, severe learning disorders, and mild problems with expressive language. *Id.*

The ALJ found that Dr. Stoltzfus's opinion about Plaintiff's cognitive functioning was generally consistent with Plaintiff's presentation and performance during the evaluation. *Id.* She gave the opinion significant weight with two exceptions. *Id.* First, she found that Dr. Stoltzfus's opinion regarding Plaintiff needing accommodation in the workplace was inconsistent with Plaintiff's ability to manage his activities of daily living, volunteer at church, and work as a cherry line picker. *Id.* Second, she found that his opinion failed to account for his own note that Plaintiff may have low motivation and was capable of performing at a higher level than he had to date. *Id.* The ALJ noted that she added restrictions to the RFC based on Plaintiff's allegations at the hearing.

Plaintiff argues that the ALJ erred because the ALJ "cherry picked" evidence from the psychological evaluations to support her RFC and further, she failed to develop the record in

light of Dr. Cole's recommendation that Plaintiff undergo further medical evaluation. Plaintiff notes that Dr. Cole found that Plaintiff had problems with concentration and memory, that his verbal comprehension was in the first percentile with his working memory in the second percentile, and that he had a borderline level of intellectual functioning. Tr. 424. Dr. Cole also suggested that if Plaintiff received benefits, another individual should be assigned to assist him with managing such funds. Tr. 425. Dr. Stoltzfus's evaluation also reported that Plaintiff's "Daily Living" skills were in the third percentile, his communication skills were in the first percentile, and his reading and writing skills were also in the first percentile. Tr. 435. Dr. Stoltzfus also noted that Plaintiff needed structure and guidance to be more productive and would benefit from vocational rehabilitation services and a job coach. Tr. 437. He also opined, as the ALJ acknowledged, that Plaintiff would need accommodations for his below average IQ, severe learning disorders, and mild expressive language problems. *Id.*

Plaintiff argues that the ALJ ignored these portions of the evaluating practitioners' opinions, even though she gave the opinions significant weight, and that the RFC fails to account for Plaintiff's attention, memory, judgment, anger, and personality issues. I disagree.

First, as to Dr. Cole's report, the low verbal and working memory scores were the basis for Dr. Cole's opinion that Plaintiff had borderline intellectual functioning. Tr. 424 ("The client's scores [including verbal comprehension and working memory] place him in the borderline level of intellectual functioning"). The ALJ specifically noted this level of functioning in her summary of Dr. Cole's report. Tr. 21 ("His scores . . . showed a borderline level of intellectual functioning with a full scale IQ of 72."). She did not reject Dr. Cole's opinion about Plaintiff's cognitive functioning. Tr. 25 ("His opinion regarding the claimant's cognitive functioning is consistent

with the claimant's presentation and performance during the examination , as well as his demonstrated activities in his personal life . . . ."). Notably, despite his findings showing problems with attention and concentration and working memory, Dr. Cole opined that Plaintiff was able to sustain simple routine tasks and had no problems completing a simple multiple-step task. Tr. 425. This is precisely one of the limitations provided for by the ALJ in the RFC which restricted him to simple, routine tasks, as well as jobs with no reading, writing, or math requirements, jobs where communication with others is not essential, jobs with no public contact, and jobs with less than occasional changes in work tasks. *Id.* Contrary to Plaintiff's argument, the RFC incorporated Dr. Cole's limitations.

As to the representative payee recommendation, this is not determinative of disability. Additionally, Plaintiff does not indicate what specific workplace limitation or skill this recommendation affects. Moreover, as Defendant points out, Dr. Stoltzfus also noted that Plaintiff would have difficulty managing finances, but unlike Dr. Cole, Dr. Stoltzfus explained that this was due to Plaintiff's difficulties with mathematical calculations. Tr. 437. Dr. Stoltzfus stated that Plaintiff was able to understand basic concepts of money management. *Id.* Thus, I agree with Defendant that the RFC's prohibition on mathematical calculations as part of Plaintiff's job duties reasonably accounted for Dr. Cole's recommendation regarding a representative payee.

As with Dr. Cole's opinion, the RFC reasonably accounted for Dr. Stoltzfus's opinions. Notably, Dr. Stoltzfus noted that Plaintiff's borderline function in daily activities "appears to be a combination of a lack of motivation, dependency on others, and a general tendency to avoid assuming responsibility for day to day tasks." Tr. 436-37. As the ALJ noted, Dr. Stoltzfus

opined that Plaintiff was able to do "much more" on a day-to-day basis, "as well as in terms of employment, than he has done to date." *Id.* While indicating that Plaintiff would need structure and guidance to be productive, the RFC's limitations to simple, routine work and jobs that require less than occasional changes in tasks appropriately account for these limitations. Additionally, the reference to a job coach was not phrased in mandatory language. While Dr. Stoltzfus opined that Plaintiff would benefit from a job coach or vocational rehabilitation, the ALJ reasonably interpreted Dr. Stoltzfus's opinion on this issue as suggestive, not imperative. Thus, it was not error for the ALJ to exclude such a requirement in formulating the RFC.

Finally, in making his recommendations, Dr. Cole stated that Plaintiff's claimed pain problems and intellectual deficits/learning disorders would be the primary factors affecting his vocational success. Tr. 425. He continued by stating that "[a]s to the former area," meaning Plaintiff's claimed pain problems, "further medical evaluation is suggested to determine the client's specific physical limitations." *Id.* Plaintiff argues that this recommendation triggered a duty by the ALJ to further develop the record by ordering a consultative physical examination. I disagree. First, like Dr. Stoltzfus's recommendation regarding a job coach, this recommendation by Dr. Cole was a "suggestion" and was not an imperative. Second, because Dr. Cole is a psychologist and not a medical practitioner, his recommendation is reasonably understood as suggesting that he lacked the skill and knowledge to evaluate Plaintiff's chronic pain complaints. However, his recommendation was not a statement that the Administrative Record lacked sufficient medical records to allow the ALJ to form an opinion. I agree with Defendant that Dr. Cole's statement did not trigger the ALJ's duty to order a consultative physical examination.

/ / /

III. Lay Witness Testimony

The ALJ discussed the written statements provided by Plaintiff's mother Shirley Calhoun and his significant other Janean Calhoun[1]. Tr. 24, 26. As to Plaintiff's mother, the ALJ noted that she stated Plaintiff had days when he was too sick to get out of bed, that he experienced fever, chills, nausea, vomiting, and body aches, and that he had trouble standing, walking, lifting, and performing postural movements due to fatigue. Tr. 24. She also said he had problems sleeping due to fevers and body pain and that he became easily frustrated when he attempted to work due to difficulties reading and communicating with others. *Id.* She remarked on his issues with memory, concentration, and completing tasks and said that naproxen made him tired. *Id.*

As to Plaintiff's significant other, the ALJ described her statements, many of which were similar to Plaintiff's mother's observations. Tr. 26 (noting her statements that Plaintiff became easily frustrated due to his comprehension difficulties, that he had problems with concentration, that he had fever, nausea, and pain as a result of hepatitis C flare-ups, and that he had reduced strength and endurance). She also stated that Plaintiff read at a second grade level and that she believed he had an undiagnosed developmental disability. *Id.*

The ALJ rejected the testimony of both of these witnesses. She found that the statements regarding Plaintiff's physical symptoms were "grossly inconsistent" with the overall medical evidence of record. Tr. 24, 26. She explained that the record showed that naproxen was effective in controlling Plaintiff's pain with no mention of side effects and that his medical conditions were generally controlled with medications and/or did not cause persisting symptoms.

---

[1] Plaintiff refers to the second lay witness as "Ms. Douglass" but the ALJ used the name noted above.

*Id.* This undermined the lay witnesses' testimony. *Id.* The ALJ also found that Plaintiff's demonstrated level of activity in his personal life, including independently managing his activities of daily living, walking as a form of transportation, and active involvement with his church, was inconsistent with Plaintiff's mother's statements that Plaintiff is often ill and with the statements about his physical limitations made by his significant other. Tr. 24, 27. The ALJ further found that both witnesses' statements about Plaintiff's cognitive difficulties were undermined by his demonstrated ability to engage in certain mental tasks such as making wind chimes and playing computer games. *Id.* The ALJ also noted that the significant other's testimony failed to note that Plaintiff's ongoing alcohol use had affected his ability to get proper hepatitis C treatment and may in fact have caused some of Plaintiff's symptoms. Tr. 27. The ALJ also suggested that Plaintiff's significant other may have financial motives for her testimony because of her status as his significant other, girlfriend, or wife. *Id.*

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694.

Plaintiff argues that the ALJ erred in rejecting the lay witness testimony. Plaintiff argues that the testimony is consistent with the medical record and that the ALJ may not dismiss lay testimony because it is not based on objective medical evidence. Finally, he contends that bias due to familial relationship is not a germane reason to discount lay witness testimony.

I reject Plaintiff's argument that the ALJ erred. First, contrary to his assertion, the lack of corroboration by the medical record is a germane reason to discredit third-party statements. *See*

*Griffith v. Colvin*, No. 3:13-cv-00585-HZ, 2014 WL 1303102, at *3 (D. Or. Mar. 30, 2014) (citing *Glover v. Astrue*, 835 F. Supp.2d 1003, 1012–14 (D. Or. 2011) for the proposition that "the basis for the holdings in [earlier Ninth Circuit cases] that an ALJ may not reject lay testimony for being unsupported or uncorroborated by the medical evidence, is no longer in effect"); *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001) ("[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence") (citation omitted). Here, as previously discussed, substantial evidence supports the ALJ's conclusion that objective medical evidence contradicts the lay witness statements concerning the extent of Plaintiff's impairments.

As for his daily activities, the discussion above in regard to the ALJ's credibility determination, applies equally here. The ALJ did not err in concluding that the lay witness testimony of a debilitating level of functioning was contradicted by Plaintiff's activities of daily living. Even without considering Plaintiff's significant other's possible financial motive, the ALJ provided specific, germane reasons for her rejection of the lay witnesses' testimony.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this _____ day of _____, 2017

Marco A. Hernandez
United States District Judge